Good morning, Your Honors. If it pleases the Court, David Martin for the petitioner, Michael Todd. This is a federal habeas ethic case and jury coercion. And the Supreme Court case that we're relying upon, that we say that there's been unreasonable application of the law on the facts, is Lonefield v. Phelps, which is in simplicity itself, in some ways, it just simply says, you know, a litigant is entitled to an uncoerced verdict. And this does apply. This was a federal AEDPA case. And that it must be determined by the totality of the circumstances. And that's the rule by which we're working under. Now, it's our position the State appellate decision in this case is unreasonable, both on the law and the facts. And we begin with something we can agree with the Court, which is the Court looked at the fact that there was a numerical inquiry into the jury. And it said, well, under State law, you know, that States are required to – no, States are allowed to make this inquiry, and that's not a per se violation of the Constitution. Of course, we agree with that. However, were we part company, and where I believe the State decision was clearly erroneous, a State decision at this point says, well, we will now dispose of that issue and turn to the next issue. There's no disposing of a particular factual issue in a jury coercion case. Every single fact that's involved in a jury coercion case, they're all related one to the other. It's not several issues. We're not talking about several issues here. We're talking about one legal issue. So when we talk about the numerical inquiry, we have, in fact, we – well, it's not by itself sufficient. Nevertheless, as Lowenfeld itself said, it's instructive to the dangers of jury pooling. In other words, we're already started on dangerous territory. And then from that point, we move on to what happened next. And the thing that actually happened next was something that's unprecedented. I haven't been able to find anything. Respondent hasn't been able to find anything on it, but I think we can look at it, and that is this. The Court asked the juries questions of what was bothering them. Now, I have been unable to find a single case where, when we have a hung jury, we have a hung jury situation here, and this we're talking about 15 hours, seven  And the judge then asks the jury, says, well, what's troubling you? Well, that's what happens in the decisions, and the decisions look at this, and it simply says, well, you know, the Court is allowed to comment on the evidence. Well, all right. But this is quite different. It's one thing for the Court to say, well, okay, I see your – we have a hung jury here, but I'm going to make my comment, and perhaps that helps. That's allowed. There's no question about that. And it's allowed even if, as it was here, it's entirely negative. But the Court did something significantly much, much different. It asked the jury what its problems were. It said, all right, I want to get inside the jury deliberative box. I want to know precisely what your problems are. You write these things out for me, and then I'm going to reply to this. This is unprecedented, and this is – this is highly different than simply commenting on the evidence. This is – this is going right into the jury box and saying, I'm going to be a juror. Now, I know there's no cases on this, but I assume that there's no cases on this because this is way over the top. We don't know. Okay. Let me ask you this question in terms of your analysis. I think we're dealing with – are we dealing with the ADEPA, the AEDPA standard? Yes. So we would have to say that the approach taken by the state trial court was contrary to law, to federal law, determined by the Supreme Court, or an unreasonable application, again,  So even if we had a Ninth Circuit precedent that said essentially what you just said, we couldn't give relief in a state prison or habeas case. We have to look for what is the U.S. Supreme Court said. Well, the U.S. As I understand it. But the U.S. Supreme Court on this issue just simply said that a juror is entitled to an uncoursed verdict. And Williams v. Taylor said, look, just because it's a fact-intensive inquiry, inquiry does not prevent an AEDPA analysis. And to give you an example of, well, what if a judge took the bailiff's – and this is a ridiculous example, but in some ways. But what if the judge simply said, I'm ordering you to return a verdict. Well, there wouldn't be any cases on it. There wouldn't be any factual similarities to this, but I think it wouldn't have any problems that this would obviously be coerced in the jury. So in other words, you can't be completely bound by the factual examples of the past. Otherwise, that allows – that basically becomes almost a dead letter, because every time a judge thinks of some new way to coerce a jury, then there would be no potential to review this. And let's focus on – or help me focus on what your client argues was coercive in what this judge did. He used some language that was kind of on the side of non-coercive, like when he told the jurors, it's not up to me to decide. It's up to you, and you're the ultimate judge. You know, he said some things to the jury, I think, that were on the other side of the scale. The thing that was argued at the trial – I mean, he focused on one thing. And that's this. The jury came back with five questions. Five questions. The judge ignored four out of the five. Did not tell when he read off his answers to those questions. Did not tell the jury he was ignoring his questions. The jury is mostly concerned with, well, when did this end? When did his involvement end? Judge totally ignores those questions. And the defense counsel at the time said, well, look, Your Honor, you asked them to ask you questions, all right? And now you're making your comment, and you're totally ignoring their questions. So what you're essentially telling the jury is that your concerns are irrelevant. And when the judge, despite this objection, and being told of this objection, instead of saying – and the judge could have done this. The judge could have said, well, look, I'm not answering four of your five questions. This is my comments, but I'm not answering. It's included within the instructions. And he did give instructions relevant to this. But the problem is, I point out, there's no way that these jury – this jury knew that when he said the instructions, that he's answering four of the five questions within the instructions. We're attorneys. We know how all this works out. Lay people don't. So effectively, here you have a jury. They'll listen to the judge, give a bunch of instructions. They've already told the judge, we don't want any more instructions. We're not interested in that. And then the judge gives his comment on the evidence. And four of the five questions, the things that were most – the first three were all concerned about when this involvement went in, and there's no comment about that whatsoever. And as trial counsel said at the time, he says, look, you're effectively telling the jury that their concerns are meaningless. And I say that's a very good objection to that. And in fact, you know, an hour and ten minutes later, a verdict came back. This was a hopelessly deadlocked jury, 9-3. Hour and ten minutes later, they come back with a verdict. That's precisely what occurred. The judge in this case not only asked questions, but then he failed to actually, you know, respond to those questions and failed to tell the jury members that that's what, in fact, that he was not doing, essentially. So there's no reason why the jury would know that when he's making these comments on the evidence that his comments on the evidence wasn't relating to their questions. We know that because we're attorneys, you know, judges. Lay people don't. And that was so deceptive here. And the Court could have easily even – and he had that objection before him. He had the objection before him. The Court could have easily said, look, I've decided not to respond to four of your five questions. But it's in – but it's in the instructions here. He could have told the jury that. And if that's the case, then certainly much of the steam would go out of that. But the Court chose not to do that despite the objections of counsel. And it seems to me that this is – and this is something, by the way, talking about a reasonable application, going back to the unreasonable State decision. They didn't deal with that. They didn't even deal with that. Look, the Court is asking questions of the jury, and they're not responding to the questions. Despite the fact being throwable, they don't respond to that. All the State decision says is, well, the Court has the right to make comments on the evidence. Okay. But that's not what we're talking about here. We're not talking about the Court has the right to comment on the evidence. What we're complaining about is the Court asking questions, and they're not responding to those questions, even though there's objections on that very point. And that's – So that's your point, and it's an interesting one. Your point is that the Court's failure to speak constituted coercion. I don't know how – I don't know how quite I get it. The Court's speaking by not explaining what it was saying, I think would probably be more pointed. In other words, the Court's representing to the jury. He's told the jury he's going to respond to these questions. He's told the jury. And then he responds, doesn't respond to the questions, and then doesn't tell them that that's what he's doing. In other words, he didn't explain what he's doing. He represented one thing, that I'm going to respond to your questions. And then he does something different and doesn't tell them that. And that is precisely what trial counsel is objecting to at quite some length. And all this – okay. One second. Hold on one second. Okay. He gave a supplement. He gave a supplemental instruction, right? Sorry, I'm not sure. Did he give a supplemental instruction? Not quite. He repeated some of the instructions. You know, it was the same instructions he gave before, but he said them again. And, yes, he did. What he didn't do is explain that this was responding to these questions. There's one thing I do want to get back to in terms of the reasonableness of the opinion, because I think this is important because it happened in both of them. When you're dealing with coercion, you can't deal with each single fact separately like it's a separate, distinct issue and say, all right, that by itself is not sufficient. Let's move on to the next issue. That's clearly what the State appellate court did here. I mean, it's very, very – and that, I think, is an unreasonable application to deal with each fact separately as if each fact was a separate issue rather than the entirety of the facts. Okay. That's okay. All right. I was waiting for a question. There's another issue I haven't brought up, and that is when the court was asking the jury about – they want questions from them. One of the juries was kind of taken aback by this, and he says, well, why do you want to ask us questions? I mean, as I said, this is highly unusual procedure here with the court being directly involved in the jury's business, and you want us to change your mind, and the court said, absolutely. Now, again, we're going back to the Jimenez case where it was a lot less than that where all the court was just simply saying, well, it looks like we have some movement here. And, again, that was in that case, well, we have some movement here, and so I think we should keep deliberating. And that was deemed sufficient. Here we have a court that is telling the jury that, absolutely, he wants them to change their minds. And not only does he absolutely want them to change their minds, but he wants to hear what's troubling them, what they're actually, you know, talking about. And now he's going to reply to that and make responses to it. Did the State court say that it was considering all the circumstances together? It kept using the word totality of circumstances. However, it was completely – it was apparent that it was not doing that because it said, once it got done with the issue of the numerical, you know, the numerical count, it says, we now – we have disposed of that issue. We now turn to the next issue and then talk about another thing, juror quotient. So even though it used those terms, totality of circumstances, the court made it very clear that it wasn't operating in this fashion. In fact, what it was doing was dealing with one issue, saying, well, that's not per se violation, and then going to the next issue, saying that's not per se violation. And on the next issue, particularly on the next issue, when it's just simply saying about the court responding to the juror's questions – I'm sorry. When it's just simply talking about the court making comments to the jury, that's not at all the issue. I mean, it didn't respond to the real issue. It is – the real issue is it asked questions to the jury, then did not respond to the questions, did not tell them. It totally ignored that issue. And so even though it said totality of circumstances, there's nothing in – you've gone to Williams v. Taylor. There's nothing in there that indicates they considered that whatsoever. And they've told everyone, including this Court, that they're considering these issues separately, it's distinct, and they're not considering them in conjunction with each other, which is clearly contrary to Longfield v. Phelps. Ginsburg. What's wrong with the judge setting forth specifically which items it's considering and then at the end saying, considering the totality of all of these, there has been no constitutional violation? Judges do that all the time. Two things. Number one, that doesn't want to occur. The Court said, I'm concerned totality of the certain circumstances on that basis. It made a decision on one of the factual issues. We dispose of this issue. Then it's quite said, we turn to the next issue. So it isn't – it isn't as you put it. It isn't as the Court said, okay, these are all the factual issues, and concern all the totality of the circumstances, we dispose of the whole thing. It didn't say that. It very clearly was doing it piecemeal. That's what the opinion says. It's in the brief. And secondly, it's ignoring all – almost all the significant issues in this case. There's nowhere in the opinion to talk about the comment about absolutely. It doesn't appear anywhere in the opinion. It doesn't talk at all about the fact that the Court – well, it does say it asked for, you know, questions from the jury, but it doesn't discuss at all the fact that they failed to answer them. There's no discussion whatsoever in there. So since that was the key issue all along, there should be some discussion of – it would seem to me to be a reasonable – some discussion of what was the key issue at trial court, appellate court, you know, when it was argued below. The fact that, look, you asked for these questions, you didn't respond to them, you didn't tell the jury you didn't respond to them, and, of course, on top of everything else, everything the Court said greatly favored the prosecution case. Did the Court give a supplemental instruction on, like, when a conspiracy ended? And reread the full instructions? If you mean a new instruction, no. If you mean did it reread the old instruction, yes. Was there a new instruction on when aiding and abetting ends? I think – you know, I think I'm correct on that. I think there was a slight new instruction on that. I think that's true. Okay. Thank you. So now, if the Court gets five questions and then the Court gives a supplemental instruction on aiding and abetting because, I guess, Mr. Todd had left the premises with his girlfriend or left before the final act with the victim, and he gives a new instruction on aiding and abetting, which questions did he not address? He did not – he told the jury that he would give his factual opinion on their questions. His factual opinions did not address four or five questions. You're right. There are the jury instructions. But he never informed the jury that, in fact, that he is responding to the questions in that form. I should probably know this from the record, and I'll go look at it again in the briefs, but what are specifically the questions of the jury that he did not address? Well, it's stated in the record. I just said that they were concerned about, well, what point does his responsibility end because he left at 4.30. The actual medical evidence indicated that whatever the fatal blows were happened within six hours when the guy got out, 14 hours. I understand that. But often a fatal blow to the head causes swelling, and, you know, someone dies later. It's hard, even if he left before the final blow, it's hard to know where he ends. I'm just saying that there was sufficient evidence to support the three holdout jurors. I'm not – this is not a sufficiency of evidence argument. I'm just saying there's sufficient evidence to support the three holdout jurors. I was trying to understand what were the specific questions, if you know now, that he didn't address. Generally speaking, at what point can it be said that he no longer has any involvement in what's occurring. And what makes this interesting is the fact that this was not a planned event. This guy comes over. Nobody knows he's coming over. According to my client's testimony, which is, you know, reasons to believe it since the only two people contrary were dark and full, he said, you know, that's a minimal involvement, enough for him to be convicted of the torture, and then went ahead and left. There was plenty of evidence there. And so the question is, what's the natural probable consequences? What – at what point does his involvement end? In other words, if he has a – he helps the guy out a little bit for a couple hours, as it was, does he still have involvement? And I'm paraphrasing all this. Does he still have involvement what occurs afterwards? And they were all – they were all concerned with that whole issue of, all right, at what point does his involvement end? What's the thing on that? And that's what – and they said, we're not arresting jury instructions. We're not arresting that. But we would listen to what the Court has to say about this. And the Court goes on to talk about the role of things, the role of that. In fact, I'm just going to keep going. Mr. Martin, I took you over or fused up your time by my asking you questions, and so we'll give you three minutes for rebuttal, even though your time's up. Good morning. May it please the Court. My name is Harry Joseph Colombo, Deputy Attorney General representing appellee slash respondent in this case. Before I turn to the substantive issue of the juror coercion claim, I'd like to address one thing briefly that appellant's counsel did not raise, and that is the question of this Court's jurisdiction, which I noted in my brief. The notice of appeal, such as it was construed by the district court in this case, was not timely filed. And while the district court construed petitioner's application to have the court reconsider its determination to adopt the findings and recommendations of the magistrate judge and deny relief in this case, made no specific determination that there was a basis for extending the statutory timeframe for filing a notice of appeal and simply determined to grant, in effect, a certificate of appealability and file the motion as if it were a notice of appeal. So I think that this Court has to, first of all, consider whether or not it even has jurisdiction to hear this appeal in the first instance. Even if it were to be construed that petitioner's motion to set aside the judgment constituted a notice of appeal and or an application to extend the time for filing, there's no basis for the district court to have granted that application because petitioner did not proffer any basis or justification for the district court to have extended the time for filing the notice of appeal. He did file that within the time limit, correct, within which you could ask to file a late appeal. Well, he certainly filed it within 30 to 60 days after the time that the district judge entered into the original order denying relief and adopting the magistrate's findings and recommendations. The question is whether or not an appellant's counsel refers to it in his reply brief, whether or not there was some essentially good cause to excuse the untimely filing. The way I read the petitioner's motion to set aside the judgment, he doesn't say, well, you know, I forgot to read the federal rules of civil procedure or appellate procedure to determine when I'm supposed to file some document. He just says this court erred in its determination to deny relief and I want you to set aside your judgment in that regard. So we'd have to essentially hypothesize some reason for the district court to have granted petitioner relief for his untimely filing of the notice of appeal, even if it were to construe that document as a notice of appeal. I point that out as a jurisdictional issue that counsel didn't raise in his opening argument that I think the Court needs to be reminded of. Turning now to the issue of the juror coercion claim, I think it's important, as this Court has alluded to, to remember that the standard of review under AEDPA has to do with whether or not the state court, in this case the California Court of Appeal for the Third Appellate District's determination in denying the claim of juror coercion was contrary to or clearly unreasonable under established federal law. And even if we adopt the standard that counsel suggests this Court should adopt, which is totality of the circumstances, I think it bears reminder to look at exactly how this question of the juror, the jury being deadlocked in this case, arose. And I would reference the Court to excerpts of record tab 8, starting with the reporter's transcript of the proceedings in this case at page 1655, which the Court, at lines 18 to 24, reads into the record the fact that it had received a note from the jury foreperson indicating that the jury had reached verdicts on all counts as to appellant's codefendant buffer and five of the six counts relating to appellant. What the jury at that point had expressed inability to reach a verdict on was the murder count, in terms specifically, as the Court reads it, the degree of the murder charge. The Court then proceeds to inquire of the jury foreperson whether or not, in his view, further deliberations might be productive towards leading to an ultimate verdict depending upon whether the Court were to either reread instructions, give further instructions on the law that might clarify some issue for the jury, or whether or not the Court might perhaps comment on the evidence in a way that would assist the jurors in reaching a verdict. The Court then proceeds to ask the foreperson whether or not he believed that the jury could reach a verdict if they continued to deliberate further, at which point I believe it's on page 1658, in which the foreperson responds to the Court's inquiry about how many times the jury had considered or tried to reach verdicts on this particular count. The foreperson says, I think we attempted about 10, 15 times from one degree to another. Which suggests, in my view, that the jury was concerned with whether or not this might be first- or second-degree murder depending upon how they determined appellant's participation in the brutal assault and torture, which ultimately resulted in the victim's death. The Court then says, okay, now, I'm going to ask you for two numbers. I only need to know the numerical split, not how people are leaning, but what the split was on the last vote. The foreperson then tells the judge, I don't remember, and that continues on on page 1659. The judge then tells the jury to go back and take a vote, and then to report to the judge what that vote split is. The foreperson returns to the Court and tells the judge on page 1659 at line 19, it's 3 to 9. So we don't know if that's 3 in favor of guilt and 9 in favor of acquittal, or 3 in favor of acquittal and 9 in favor of guilt. The foreperson doesn't clarify that. The judge at that point then proceeds to ask the foreperson and the individual jurors whether or not either further instructions or comment on the evidence would assist in reaching a conclusion, a verdict. And it's at that point that I think it bears reminder when counsel talks about the judge saying he's absolutely interested in achieving a verdict in this case, if you look at page 1663, and specifically at lines 16 to 21, what we see is this is the colloquy between the trial court and the jurors in which he's asking them individually whether or not they believe that if the court were to comment upon the evidence, that might assist the jurors in reaching a verdict. And when the judge propounds a question to juror number two, that juror responds, are we saying to help us personally change our views? So the juror is asking the judge a question to which the judge responds, absolutely. Do you think that my comments on the evidence might be helpful in resolving the division among the jurors so there is a reasonable possibility that you might be able to reach a unanimous verdict? At which point that juror simply responds, I don't know. The judge moves on then to jurors number three through 12. So I suggest to this court that the trial court in this instance was not in any way, shape or form trying to coerce the jury into reaching a verdict. Initially he's simply inquiring whether or not there's something that judge might do under those circumstances that might propel this jury to reach a verdict after many days of deliberation on a very factually complex, technically difficult case for them to resolve, in which they've already invested a significant amount of psychic energy in coming up with verdicts on essentially 11 out of 12 difficult charges. At that point, the judge then suggests that the juror foreperson go back with the jury, formulate specific questions which the jury could propound to the court, which it could then try to formulate a response to. The jury foreperson does that. The jury foreperson has described in the brief what happens thereafter, which I think is most important, is the judge formulates his response, he informs the attorneys what he thinks he's going to do. There is an objection by defense counsel. Frankly, I don't think defense counsel offers very much by way of helpful advice as to how the court should respond to the questions. He simply says, I don't like the way you're going to do it, I don't want you to do it and I therefore object. The judge says essentially, well, I think this is the right way to proceed and I'm going to do so. Now, it's important when we look next in the transcript when the court actually attempts to respond to the jurors' questions and this begins at pages 1698 to 1699, again, excerpts of record tab eight of the reporter's transcript of the proceedings. The judge prefaces all of his comments in regard to the evidence by saying, my comments are not intended to be exhaustive. I do not intend to discuss all the evidence. I only intend to discuss two items of evidence, which for my review of the notes, I believe are uncontradicted facts in this case. And he also proceeds to say, my comments are intended to be advisory only and are not binding on you. You must be the exclusive judges of the facts and the believability of the witnesses. And you may disregard any or all of my comments if they do not coincide with your views of the evidence and the believability of the witnesses. So the judge is essentially telling the jurors, look, this is how I view the evidence from my perspective as a judicial officer. This is what I believe to be uncontradicted facts. And then the judge goes on from there in giving his comments on the evidence to essentially propound rhetorical questions back to the jury in the context of consider for your purposes for deliberating how what I believe as the judge, the uncontradicted evidence to be, and how that fits in with the applicable legal standards for you to arrive at a verdict on this particular chart. And so what the judge does is he says, look, if you find A, then you might believe this to be the state of facts. If you find B, then you may believe this to be the true state of facts. If you find C, then you may determine that neither A nor B applies. So what the judge says is the state of facts. So if you were to respond to Mr. Martin's argument that the judge by answering one question but not answering others slanted this? Well, I certainly disagree vehemently with that characterization of the judge's responses to the juror's questions. I think what the judge did was he essentially synthesized the questions that were propounded to him by the foreperson on behalf of the jury, and tried to formulate as noncontroversial and as impartial and objective a formulation to those questions as he could come up with, which did not essentially put him in a position of advocating pro or con one way or the other on behalf of either side, but simply suggesting, here's what I view to be uncontradicted proof in this case, and the California Court of Appeal concurred. It said, lookit, the judge talked about two items of evidence which were essentially undisputed in the record. And what the judge did was effectively create a construct within which the jurors could then take that evidence and try to arrive at a verdict. This would be the evidence that Mr. Williams didn't resist or fight back? That was one item that was discussed, yes. And then I think the other item had to do with whether or not at the point in time when the female who was present during this transaction went over to another person's house and says, lookit, they're beating this guy, something's got to be done or stop it or some such thing. So there's a question as to whether or not appellant was still present at the time that Williams was being continually beaten at that point when the other person was present. And whether or not the other person was gone from the premises. Is there any Supreme Court precedent that addresses the issue of a judge inquiring with a jury about what's bothering them? Well, if there is, I haven't found it. And I've got to say that I was looking last night on the Internet and trying to find if there was something out there that I had missed since the time I filed this brief a few months ago. And I cannot find a single Supreme Court decision that addresses the question of whether or not it's appropriate for a state trial judge to ask jurors in a case to propound questions to that judge for the purposes of formulating a response that would address those particular factual or evidentiary issues. If there is, I'm not aware of it, and I don't know where it is, and I must have missed it, but I don't know of any such case. I think that the Lowenfield case is probably as close as we're going to get, and that's clearly not a reason, clearly established federal law for purposes of this argument in this case. Because if we're talking about juror coercion, what counsel's arguing here is we have to essentially take this new, unusual, unique argument and put it in court. And we set up circumstances and say, well, it rises to the level of juror coercion, not because any individual component comprising this claim is unconstitutional per se, but because when we look at the, for lack of a better phrase, gestalt of the situation, that suggests to us that it therefore constituted coercion, because the jurors would have believed that the judge wanted them to reach a verdict, and therefore sought to get them to reach a verdict. And so, the court totally directed them to return a verdict, which they were not otherwise prepared or inclined to do so. So I think when we look at the totality of the circumstances in this case, as the California Court of Appeal did, as the magistrate judge did, and as the district court confirmed in its review of the record, it's clear that this trial court did nothing improper, did nothing impermissible, certainly did nothing rising to the level of a constitutional violation. Which would warrant the granting of relief in this case, and we therefore submit that this court should affirm the judgment of the district court. Unless the court has any further questions, I'm prepared to submit the matter on the briefing. Thank you. I don't, Judge Covello, Judge Rollins, thank you. The matter has no questions, thank you. Hey, Mr. Martin, although your time was up, we're giving you three minutes to cover rebuttal, if you wish. All right, thank you. Just briefly on the jurisdictional issue, in Piquet v. Andrews, a prestigious L.A. firm was allowed to say excusable neglect. And the argument is, effectively, since my educated, self-representing client doesn't even know what to say, that that somehow should make a difference. And I think that's kind of incredulous on its face. And besides which, the stance of use of discretion, which I don't think that the counsel's even argued that it rises above. So I don't think that's really an issue. Regarding that degree, I looked through the AG's reply brief, and they said that our description of the facts was fine. I don't have the entire record before me here to dispute that, but I certainly don't remember any discussion of there being a question about the degree. And the questions would indicate that it wasn't, because the questions were regarded when he left the whole thing. So there wouldn't be any issue of degree on this. So I think counsel's incorrect. Obviously, I don't have the record in front of me to say that, but I don't assume that's correct, because I don't think it is. As far as defense counsel just generally complaining, on page 11 of the reply brief, I actually set out there, he goes into detail, talks about that he's ignored their withdrawing from the secrecy or the aiding and abetting. He's not answered those questions and emphasized the jury's irrelevant. He states all that to the Court. There's not a – it's not a general discussion. Regarding what the Court said, whether or not that was slanted, I don't know if there's any question. The Court emphasized the most damaging evidence in the entire case to my client, where this woman, who later took the victim and dropped him off on a street someplace, came to other people and said, look, they're either hurting him or killing him. In the entire case, it was the most damaging evidence. There's no question that this was very – the evidence that was talked about. I'm also talking about there was never a question. There was no resistance there. Again, that was something that was very clearly detrimental to the client. There was no ambiguity what the Court was saying to the jury. Finally – and I guess I got 58 seconds. But to me, there's a huge difference. I realize that there's no case law in this, not just the United States Supreme Court case law, but no case law in the sitting where I went and that search-find thing until I was blind. Try to find some example where a judge asked the jury what's troubling them. And I submit, despite the fact there's no cases on this, this is a very major intrusion here. It's one thing just to comment on the evidence. It's another thing for the judge to insert himself or herself directly into the deliberations, saying, I want to know what's troubling you so I can comment on those. That's an entirely different step. This is new. And what is the purpose of review if we're not going to look at things like that and see the significance? I have to say that's, to me, a very disturbing development in this regard. Well, it's a challenging question. Of course, we're constrained by the statute, the ADPA. So it's difficult in terms of we can't just make a rule that we would make on direct review. I understand. But the standard here, and it is a general one, is the jury coerced. It's not a specific one. It's a fact. You're urging that we tie all this into the Supreme Court's general standard, the jury can't be coerced. And I think if you look at the case Loewenfeld, even the early versus the early case, which is even much worse for Petitioner, they're essentially saying they are fact-based determinations. There's no way of getting about from the fact that these are fact-based determinations whether or not a jury is coerced. I mean, there's no way to avoid that. And it's the premier Supreme Court California case. It's the same thing. These are fact-based determinations. And so we have to look at the cases even when they're different. Okay. This case shall be submitted. And unless there are further questions of the panel, we shall adjourn.
judges: Gould, Rawlinson, Covello